Jon W. Green (BAR ID #024851984)
(jgreen@greensavits.com)
**GREEN SAVITS, LLC**
25B Vreeland Road, Suite 200
Florham Park, NJ 07932
(973) 695-7777
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY MECCA, | Civil Action No.: 2:20-cv-12769-JMV-MF |
| Plaintiff, | |
| v. | **FIRST AMENDED, COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL R.1:38-7 AND R. 4:5-1 CERTIFICATIONS** |
| ECOSPHERE, LLC d/b/a DISH NETWORK, CHIRAG NAGRASHNA, MICHAEL FORESTER, and BRIAN BERMAN, JOHN DOES 1-10 and SALLY ROES 1-10 (fictitious names), | |
| Defendants. | |

Plaintiff, Anthony Mecca, residing at 104 N. Beverwyck Road, Lake Hiawatha, alleges and says:

## **PARTIES**

1. Plaintiff, Anthony Mecca, was at all relevant times an employee of Defendant Ecosphere, LLC which was doing business as Dish Network.

2. Defendant Ecosphere, LLC is a limited liability company that employed Plaintiff Mecca and the individual defendants named in this Complaint. Defendant Ecosphere, LLC's place of business where Plaintiff and the individual Defendants worked at all relevant times was Roseland, Essex County, New Jersey.

3. Defendant Cherag Nagrashna was at all relevant times an employee of Ecosphere, LLC, and Plaintiff's supervisor. Defendant Nagrashna resides at 5 Dawson Avenue, Passaic, N.J. 07055.

4. Defendant Michael Foerster was at all relevant times an employee of Ecosphere, LLC, and Plaintiff's supervisor.  Defendant Foerster resides at 1628 Windrew Avenue, South Plainfield, N.J. 07080.

5. Defendant Brian Berman was at all relevant times an employee of Ecosphere, LLC, and Plaintiff's supervisor.  Defendant Berman resides at 204 Hudson Street, Apt. 1, Hoboken, N.J. 07030.

6. Defendants "John Does" are fictitious names for those individuals who were employed at all relevant times by Defendant Ecosphere, LLC, and Plaintiff's supervisor.

7. Defendants "Sally Roes" are fictitious names for those individuals who were employed at all relevant times by Ecosphere, LLC, and Plaintiff's supervisor.

## PLAINTIFF'S FACTUAL ALLEGATIONS

8. Plaintiff Mecca commenced employment with Defendant Ecosphere on October 17, 2016.

9. Plaintiff Mecca was hired as an inside sales associate.

10. At all relevant times during his employment with Defendant Ecosphere, Plaintiff Mecca was a practicing Muslim.

11. At all relevant times, Defendants Nagrashna, Foerster and Berman and possibly other supervisors knew that Plaintiff was a practicing Muslim.

12. From December 2016 to March 2017, Defendant Nagrashna would constantly belittle Plaintiff in front of his co-workers.

13. In June 2017, Plaintiff Mecca was transferred to the retention department.

14. During training for the retention department, in June 2017, two black males and one black female made sexual harassment remarks pertaining to Plaintiff Mecca's hand size and phone, that his, "phone was made for people who have small hands and we know what that means." Plaintiff reported this harassment to Human Resources that resulted in no tangible lessening of the harassment.

15. Because Plaintiff Mecca was an observant Muslim, he made use of a "prayer room" at Defendant Ecosphere's workplace.

16. In July 2017, after Plaintiff Mecca came out of the prayer room, Defendant Nagrashna, knowing that Plaintiff was an observant Muslim, called him out by asking what he was doing in that room in front of the whole team. Plaintiff Mecca was afraid to reveal the true purpose of his use of that room, so he made up an excuse which in turn had Defendant Nagrashna berate him more saying that he was not allowed in that room.

17. Plaintiff Mecca was constantly belittled by Defendant Nagrashna who kept telling him that Plaintiff Mecca was not good at retention of customers and that he should go back to sales. The belittling became so bad that Plaintiff Mecca considered quitting. Plaintiff Mecca coped by creating a joke saying he was the best canceler of customers in the building to ease harassment on all fronts and would play the game that he loved to cancel customers.

18. Defendant Nagrahsna (known as "Chi") would constantly send Plaintiff Mecca to lunch early for canceling before 9 AM when Plaintiff's shift started at 7 AM.

19. Also, Plaintiff Mecca's desk was located right in front of Defendant Chi's desk who would continually play music loud making it difficult for Plaintiff Mecca to concentrate and speak with customers over the phone. Plaintiff Mecca's complained to Human Resources about this playing of loud music which fell on deaf ears. Multiple co-workers told Plaintiff Mecca that he

brought this on himself by allowing it to happen, but Plaintiff Mecca feared retribution if he spoke up.

20. In the beginning of July 2017, Defendant Foerster came to Plaintiff's desk with a bottle of water and opened the cap. He said "drink It because I know your thirsty" knowing full well that Plaintiff was fasting at the time in accordance with his Muslim faith.

21. In July 2017, Defendant Nagrashna and Olufemi Ogunnaike were at Plaintiff's desk telling him how bad he was at retention. They informed him that he should go back to sales or find another job, Plaintiff asked if going back to sales was an option. They said no, basically telling him to quit, that Plaintiff was not good enough.

22. In September 2017, Plaintiff Mecca applied for a promotion. It was rejected because of alleged attendance points that Plaintiff Mecca accumulated even though he was in good standing. Defendant Chi made sure that Plaintiff Mecca never even got an interview. By this time, threats of removing overtime become an everyday occurrence rather than once a week

23. From October 2017 through December 2017, Plaintiff received approximately seven (7) random harassing internal phone calls with either no one on the other end, where no one would speak and leave the phone on by their desk and then Plaintiff would hear people laughing: Defendant Berman or Josh Fishman confirmed they made the calls. It was a running joke to them. These harassing calls were distracting and significantly affected Plaintiff's performance as. he would be waiting for a customer call when the harassing calls came in.

24. In January 2018, Defendant Nagrashna deliberately berated Plaintiff Mecca in front of his co-workers and other supervisors. Defendant Michael Foerster and Alex Rivera laughed as they witnessed this humiliating tirade for canceling 2 customers in a row. This berating and derisive laughter was a daily event.

25. The work atmosphere became so bad that Rivera came up to Plaintiff Mecca with a giggle and a smile saying just stop pleading not to be sent to lunch early or "you will lose your job."

26. Plaintiff Mecca also witnessed Defendant Foerster telling a co-worker, Susan, she was nothing, berating her in front of the whole team causing her to cry. Defendant Foerster made her feel so bad she would hit herself. Plaintiff Mecca saw her crying on two different occasions.

27. In January 2018, Plaintiff Mecca was requested by a co-worker to swap shifts which were allowed; that was blocked by the GM James Port. That co-worker ended up with a derogatory remark on his account. Plaintiff Mecca was informed that his superiors did not accede to the shift request because Plaintiff Mecca was allegedly manipulating his schedule.

28. By February 2018, Defendant Chi decided to take away Plaintiff Mecca's overtime saying he will give it back when the time is right. None of Plaintiff Mecca's co-workers were subjected to this restriction. In spite of taking away Plaintiff Mecca's overtime, his score card was still in the top 20%.

29. Meanwhile, Defendant Foerster would consistently make homophobic comments to others about Plaintiff Mecca and to him. For example, in February/March 2018, he asked Plaintiff Mecca if he would let another supervisor, Grant Lipe, "blow" him for a million dollars after showing Plaintiff Mecca Mr. Lipe's Facebook page. Plaintiff Mecca protested to Defendant Foerster that he wanted no part of this conversation, but Defendant Foerster continued the taunting saying how about $5 million and that Plaintiff Mecca would not have to work the rest of his life.

30. Defendants added insult to injury because not only did they give Plaintiff a terrible schedule, they kept Plaintiff in the same area as Defendants Nagrashna and Foerster. Plaintiff requested numerous times to sit in a different location and even went to HR to request this. HR refused to intervene. Plaintiff gave up on the official seat change. To ameliorate the seating

arrangement, Plaintiff lowered his chair as low as possible hoping the dividers would prevent them from seeing Plaintiff and Defendants Nagrashna and Foerster from seeing each other.

31. In March 2018, Plaintiff Mecca was planning to stay at the end of his shift for overtime as he had two cancelled clients in a row. Defendant Chi told him to go home. Plaintiff Mecca questioned him as to why he was taking away his overtime again. A loud argument ensued which was heard by the entire office. Plaintiff Mecca reported this incident to Human Resources who downplayed the situation like nothing happened. When Plaintiff Mecca's schedule was changed, he was forced to work a schedule as though he was punished.

32. In April 2018, Defendant Foerster was serving food for food day and suggested Plaintiff Mecca choose the ham knowing full well that Plaintiff Mecca was Muslim. Defendant Foerster insisted, "It's very good." Defendant Foerster had previously told him a story how he fed a Muslim male pork and laughed.

33. In April/May 2018, Plaintiff Mecca was told by upper management that he could not work overtime unless he achieved certain statistics. Plaintiff Mecca was the only one in the building to be treated this way. Plaintiff Mecca spoke with the regional GM who informed Plaintiff Mecca that he could not be limited from working overtime.

34. While he didn't tell the general manager, who was giving Plaintiff Mecca a hard time, the harassment did not stop as management made a comment again about Plaintiff not being allowed overtime; Plaintiff Mecca responded that he spoke to the regional GM who stated that overtime cannot be limited. Plaintiff Mecca requested that this put be put in writing signed by his superior, the GM and HR. Not surprisingly, no letter was ever delivered to Plaintiff Mecca. Meanwhile, a recently hired employee was given overtime without going through the harassment and scrutiny that Plaintiff Mecca endured.

35. On Memorial Day 2018, co-workers were passing out tickets for food. They deliberately did not give Plaintiff Mecca a food ticket. One co-worker, Ramy, said that Plaintiff Mecca was fasting (for Ramadan) so he did not need a ticket. Plaintiff Mecca told Ramy, please just give him a ticket. Later that day Plaintiff Mecca went to get his meal and co-worker Josh Fishman suggested Plaintiff Mecca eat the ham. Ramy then said "you're fasting and you're picking the ham? What's wrong with you?"

36. In August 2018, a co-worker Nia asked Plaintiff Mecca where he was from. He told her he was American. She followed up asking for his national origin and he told her Portuguese and Italian. She replied that he was lying and that he was from Yemen. Plaintiff Mecca's direct supervisor heard this and knew Plaintiff Mecca was upset. Plaintiff Mecca reported this incident to Human Resources. A few days later the same comment was made by Nia that he was from Yemen. She pointed at her skin and said, "I didn't think you were white." His supervisor, Brian Luyster heard this and reported before he did to HR because he understood how this bothered Plaintiff Mecca. Yet, Nia was kept on Plaintiff Mecca's team. She received a 2nd warning but no other disciplinary measure was ever administered.

37. Defendants Foerster and Berman came up to Plaintiff Mecca and called him off the phone to come talk to them. Defendant Berman started bringing up his girlfriend and how would they like to go to Olive Garden. Defendant Foerster then mentioned Directly to Gene Leeand everyone within earshot that he spoke to Plaintiff Mecca's girlfriend and she told him that Plaintiff Mecca was "small" everywhere.

38. During the first week of November 2018, Plaintiff Mecca's Manager Fahad spoke to him and asked if he wanted to be a supervisor as there were four slots available. Mr. Fahad indicated that if Plaintiff Mecca did not avail himself of this opportunity, the procedure to become a supervisor was going to change. Mr. Fahad's offer was heartfelt, but Plaintiff Mecca declined

the offer and told him he could not take the position for financial reasons. The real reason Plaintiff declined the offer was the harassment by his supervisors and taking the position would place him in close proximity to them.

39. In January 2019, Plaintiff Mecca received a reprimand for allegedly being rude to a customer. The reprimand was a pretext since receipt of a reprimand requires a conversation with HR, Plaintiff's supervisor and upper management but that conversation never occurred.

40. By February 2019, Plaintiff Mecca had not worked a 40-hour schedule for 5 weeks in a row because the constant and persistent harassment became so unbearable. His supervisor, Brian Luyster informed Plaintiff that management will be speaking with him. Plaintiff Mecca then spoke to his then ex-supervisor, Grant Lupe, who informed him that as long as he logged in and out the proper times then it did not matter whether he worked a forty-hour work week.

41. Plaintiff Mecca was punished for Super Bowl Sunday and received a derogatory point with no right of appeal.  It became clear to Plaintiff Mecca that his supervisors were looking to push him out.

42. Plaintiff Mecca stopped praying on the 4th floor and his car out of fear of further harassment.  Instead he would go home on his lunch hour to pray.

43. By February of 2019, the cumulative effects of the hostile work environment took its toll on Plaintiff which required him to seek therapy.  He became depressed and would lose his temper affecting his interactions with his co-workers, customers and with people outside of work.

44. The work environment was so bad that it affected his ability to perform his job and cost him significant lost income.

45. His therapist in turn recommended that Mr. Mecca take medical leave to get away from the hostile work environment.  That leave commenced on March 5, 2019.

46. Plaintiff Mecca was so emotionally distressed from the work environment that his therapist further recommended that Plaintiff Mecca stay out until November 5, 2019. He was not paid when he was out of work.

47. When Plaintiff returned to work, Plaintiff exceeded his pro-rata quota for "saves" and "save rates". In December 2019, Plaintiff was in the top ten employees for performance for "save rate" out of approximately 250 co-workers.

48. During the 1st quarter of 2020, Plaintiff Mecca exceeded his quota for "saves" and "save rate" and was rated in the top 25-30% vis-à-vis his peers. Based on his commissions paid out for the 1st quarter 2020, Plaintiff Mecca was on pace to have one of his best years while employed at Defendant Ecosphere without working that much overtime.

49. In late February 2020, Plaintiff was disciplined for too many tiers. Plaintiff pointed out to management that 2 of the points were because Plaintiff followed his supervisor's (Brian Luyster) instructions where a customer requested to speak to a supervisor, supervisor Luyster would not take the call and told Plaintiff to send it to a different department. This resulted in a 2-point tier which leads to further discipline against Plaintiff. Plaintiff refused to sign the disciplinary paperwork. Plaintiff was informed that whether he signed the paperwork or not, he was still on disciplinary warning and if he accumulated too many disciplinary points, he would be terminated.

50. In March 2020, Plaintiff filed an internal on-line complaint about a co-worker sitting next to him that he was possibly infected with Covid -19 because his live-in girlfriend reportedly had it. The co-worker was bragging that his girlfriend was the first person in NJ to get it. The co-worker exhibited a slight cough and a mild sore throat. Plaintiff's complaint again went nowhere. Plaintiff then reported it again a few days later to the supervisor and upper management. While the co-worker was spoken to, no action was taken despite there being signs around the

building that if an employee felt sick or had any symptoms then the employee should stay home. Like Plaintiff's other experiences with filing complaints, it went nowhere.

51. Plaintiff's verbal observations to protect people at the workplace fell on deaf ears again. Plaintiff followed full protocol on reporting this issue to no avail. Some team members ended up getting Covid-19 and tested positive.

52. Despite his excellent performance, Plaintiff Mecca received a performance improvement plan on April 2, 2020 falsely accusing him of not making his quotas and that he was not a team player.

53. Plaintiff was informed via Google Chat on April 8, 2020 that his employment was terminated effective April 10, 2020.

## FIRST COUNT
### (ILLEGAL HOSTILE WORK ENVIRONMENT DUE TO RELIGION)

54. Plaintiff repeats and re-alleges the allegations set forth in ¶¶ 1-53 as though set forth herein.

55. Plaintiff Mecca was illegally subjected to a hostile work environment because of his Muslim faith.

56. By failing to immediately investigate and remediate Plaintiff's work environment, Defendants violated the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(a).

57. As a result thereof, Plaintiff Mecca suffered significant emotional distress and lost earnings.

58. Defendants' conduct was egregious and/or malicious.

**WHEREFORE**, Plaintiff Anthony Mecca demands judgment be entered against Defendants Ecosphere LLC, Cherag Nagrashna, Michael Foerster, Brian Berman, John Does 1-10 and Sally Roes 1-10 for:

a) Emotional distress damages;

b) Lost earnings and benefits;

c) Punitive damages;

d) Reasonable attorney's fees pursuant to N.J.S.A. §10:5-27.1;

e) Costs of suit; and

f) Such other and further relief as this Court deems equitable and just.

## SECOND COUNT
### (ILLEGAL HOSTILE WORK ENVIRONMENT DUE TO SEX)

59. Plaintiff repeats and re-alleges the allegations set forth in ¶¶ 1-53 as though set forth herein.

60. Plaintiff Mecca was illegally subjected to a hostile work environment because of his sex.

61. By failing to immediately investigate and remediate Plaintiff's work environment, Defendants violated the New Jersey Law Against Discrimination, N.J.S.A. §10:5-12(a).

62. As a result thereof, Plaintiff Mecca suffered severe emotional distress and lost earnings.

63. Defendants' conduct was egregious and/or malicious.

**WHEREFORE**, Plaintiff Anthony Mecca demands judgment be entered against Defendants Ecosphere LLC, Cherag Nagrashna, Michael Foerster, Brian Berman, John Does 1-10 and Sally Roes 1-10 for:

a) Emotional distress damages;

b) Lost earnings and benefits;

c) Punitive damages;

d) Reasonable attorney's fees pursuant to N.J.S.A. §10:5-27.1;

e) Costs of suit; and

f) Such other and further relief as this Court deems equitable and just.

## THIRD COUNT
### (ILLEGAL EMPLOYMENT TERMINATION DUE TO ILLEGAL DISCRIMINATION)

64. Plaintiff repeats and re-alleges the allegations set forth in ¶¶ 1-53 as though set forth herein.

65. Plaintiff's religious beliefs played a role that made a difference in the Defendant Ecosphere's decision to fire him on April 8, 2020.

66. As a result thereof, Plaintiff suffered damages in lost earnings and benefits and emotional distress damages.

67. The firing of Plaintiff violated N.J.S.A. §10:5-1 et seq.

68. Defendant Ecosphere's firing of Plaintiff was egregious and/or malicious.

**WHEREFORE**, Plaintiff Anthony Mecca demands judgment be entered against Defendants Ecosphere LLC, John Does 1-10 and Sally Roes 1-10 for:

a) Emotional distress damages;

b) Lost earnings and benefits;

c) Punitive damages;

d) Reasonable attorney's fees pursuant to N.J.S.A. §10:5-27.1;

e) Costs of suit; and

f) Such other and further relief as this Court deems equitable and just.

## FOURTH COUNT
### (EMPLOYMENT TERMINATION DUE TO ILLEGAL RETALIATION)

69. Plaintiff repeats and re-alleges the allegations set forth in ¶¶ 1-53 as though set forth herein.

70. On or about May 22, 2019, Plaintiff's counsel, Green Savits, LLC, pursuant to Plaintiff's authority, sent a letter to Kimberly D'Aloia, Senior HR Advisor at the place of business where Plaintiff worked.

71. The May 22, 2019 letter set forth Plaintiff's recited instances of illegal workplace harassment because of Plaintiff's sex and his religious beliefs and that this violated the New Jersey Law Against Discrimination.

72. Plaintiff had a reasonable belief that the hostile work environment he was experiencing was a violation of federal and New Jersey law.

73. Plaintiff's objections to the illegal hostile work environment that he himself voiced to his superiors and through his counsel was illegal retaliation that was a factor that made a difference in the decision to fire Plaintiff.

74. Defendant Ecosphere's decision to fire Plaintiff in retaliation for Plaintiff's objections to the hostile work environment was egregious and/or malicious.

75. As a result of his firing, Plaintiff has suffered lost earnings and benefits and emotional distress damages.

76. Defendant Ecosphere's decision to fire Plaintiff in retaliation for his objections to the illegal hostile work environment he was enduring violates the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 et seq.

**WHEREFORE**, Plaintiff Anthony Mecca demands judgment be entered against Defendants Ecosphere LLC, John Does 1-10 and Sally Roes 1-10 for:

a) Emotional distress damages;

b) Lost earnings and benefits;

    c)  Punitive damages;

    d)  Reasonable attorney's fees pursuant to N.J.S.A. §10:5-27.1;

    e)  Costs of suit; and

    f)  Such other and further relief as this Court deems equitable and just.

                                             **GREEN SAVITS, LLC**
                                             *Attorneys for Plaintiff, Anthony Mecca*

                                                   ***/s Jon W. Green***
                                By:_____
                                                   Jon W. Green, Esq.

DATED:  September 17, 2020

## JURY DEMAND

    Plaintiff, Anthony Mecca, hereby demands a trial by jury with respect to all triable issues in this case.

                                             **GREEN SAVITS, LLC**
                                             *Attorneys for Plaintiff, Anthony Mecca*

                                                   ***/s Jon W. Green***
                                By:_____
                                                   Jon W. Green, Esq.

DATED:  September 17, 2020

## DESIGNATION OF TRIAL COUNSEL

    Plaintiff, Anthony Mecca, hereby designates Jon W. Green as trial counsel for the above-captioned matter.

                                             **GREEN SAVITS, LLC**
                                             *Attorneys for Plaintiff, Anthony Mecca*

                                                   ***/s Jon W. Green***
                                By:_____
                                                   Jon W. Green, Esq.

DATED:  September 17, 2020

## R. 1:38-7 CERTIFICATION

I hereby certify that all confidential personal identifiers have been redacted or not utilized in this pleading and that all subsequent papers submitted to the Court will not contain confidential personal identifiers.

                                    **GREEN SAVITS, LLC**
                                    *Attorneys for Plaintiff, Anthony Mecca*

                                        */s Jon W. Green*
Dated:  September 17, 2020      By:_____
                                          JON W. GREEN

## R. 4:5-1 CERTIFICATION

I hereby certify that to the best of my knowledge, this matter is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated at this time.  I further certify that to the best of my knowledge, there are no other non-parties who should be joined in this action at this time.

                                    **GREEN SAVITS, LLC**
                                    *Attorneys for Plaintiff, Anthony Mecca*

                                        *s/ Jon W. Green*
                        By:_____
                                        Jon W. Green

Dated:  September 17, 2020